# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| STANDARD PAINTS, INC. § <br> § <br> v. § <br> § <br> RESTORATIVE INDUSTRIES, LLC, § <br> STAIN AND SEAL SUPPLY, § <br> GOPHER WOOD, STAIN AND SEAL § <br> EXPERTS, EXPERT PROFESSIONAL § <br> WOOD CARE, and CALEB ROTH § | CIVIL ACTION NO. 3:25-CV-1632-S |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Caleb Roth's Motion to Dismiss Plaintiff's Complaint, or Alternatively, to Transfer Venue ("Roth Motion") [ECF No. 11] and Defendant Restorative Industries, LLC's Motion to Dismiss Plaintiff's Complaint, or Alternatively, to Transfer Venue ("Restorative Industries Motion") [ECF No. 15] (collectively, "Motions"). The Court has reviewed the Motions, Roth's Memorandum of Law in Support of the Roth Motion ("Roth Brief") [ECF No. 12], Restorative Industries' Memorandum of Law in Support of the Restorative Industries Motion ("Restorative Industries Brief") [ECF No. 16], Plaintiff Standard Paints, Inc.'s Consolidated Response to the Motions ("Response") [ECF No. 25], Roth's Reply Memorandum of Law in Support of the Roth Motion [ECF No. 33], Restorative Industries' Reply Memorandum of Law in Support of the Restorative Industries Motion ("Restorative Industries Reply") [ECF No. 35], and the applicable law. For the following reasons, the Court **GRANTS** the Motions to the extent that the Court transfers this case to the United States District Court for the Middle District of Tennessee.

## I. BACKGROUND

This case arises out of Defendants'[1] advertisements regarding their wood staining products. Plaintiff Standard Paints, Inc., is a "Texas-based manufacturer of wood staining products and industrial coatings." Compl. [ECF No. 1] ¶ 1. Defendant Restorative Industries, LLC, manufactures competing wood staining products, including its "EXPERT Products" branded stains, and is headquartered in Alexandria, Tennessee. *Id.* ¶¶ 1, 9; Roth Br. 4-5. Defendant Caleb Roth serves as the Chief Executive Officer of Restorative Industries and is a resident of, and works at Restorative Industries' headquarters in, Tennessee. Compl. ¶¶ 11, 30; Roth Br. 5.

Plaintiff and Restorative Industries advertise and sell their products nationwide. Compl. ¶¶ 22-24, 28. Defendants allegedly have produced advertisements and social media posts "imply[ing] that because [Defendants' products] are low in volatile organic compounds ("VOCs"), they are safe for humans and animals and provide no chemical exposure to the users or the environment." *Id.* ¶¶ 31, 55, 61-62. Defendants' advertisements also favorably compare their products to Plaintiff's by highlighting the health risks associated with using Plaintiff's products and downplaying the risks associated with Defendants' products. *Id.* ¶¶ 77-81.

Plaintiff claims that Defendants' advertising tactics amount to "greenwashing," or deceiving consumers "into believing their products are safe for humans and good for the environment . . . to gain increased market share from environmentally conscious consumers." *Id.* ¶ 40. Defendants' greenwashing, according to Plaintiff, violates advertising guidance promulgated by the Federal Trade Commission and is directly contradicted by Defendants' own safety disclosures, which list the health risks associated with Defendants' products. *Id.* ¶¶ 41-42, 48.

---

[1] Stain and Seal Supply, Gopher Wood, Stain and Seal Experts, and Expert Professional Wood Care are assumed names under which Defendant Restorative Industries, LLC, transacts business and are not separate judicial persons. *See* Pl.'s Notice Regarding Status of Certain Named Entities [ECF No. 30]; Roth Br. 4-5.

Further, Plaintiff claims that Defendants' advertisements and safety disclosures omit critical information about the chemical composition of Defendants' products. *Id.* ¶¶ 52-54.

Restorative Industries "operates and manages all aspects of its EXPERT Products business line . . . including the manufacture, distribution, and sale of EXPERT Products," from within Tennessee. Roth Br. 5-6. Further, "[Restorative Industries'] marketing and advertising . . . is also managed from its headquarters in Tennessee." *Id.* at 6.

Plaintiff sued, asserting claims of false advertising under the Lanham Act, 15 U.S.C. § 1125(a), *id.* ¶¶ 85-89, Texas common law unfair competition based on false advertising,[2] *id.* ¶¶ 90-94, and Texas common law business disparagement, *id.* ¶¶ 95-98. Defendants move to dismiss on various grounds or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of Tennessee. Roth Mot. 1; Restorative Industries Mot. 1.

## II. LEGAL STANDARD

28 U.S.C. § 1404(a) allows a court to transfer venue to any other district or division where the suit might have been brought, even if venue is proper in the transferor court. "A party seeking a transfer under Section 1404(a) must show good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (cleaned up). District courts enjoy "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

---

[2] In its Response, Plaintiff clarifies that its Texas common law unfair competition based on false advertising claim is "predicated on the Lanham Act claim." Resp. 13 n.7.

3

## III. ANALYSIS

Defendants ask the Court to dismiss Plaintiff's suit or, in the alternative, to transfer this case to the United States District Court for the Middle District of Tennessee.[3] Because the Court concludes that transfer would serve the convenience of parties and witnesses and the interests of justice, the Court determines that this case should be transferred to the Middle District of Tennessee.

The Court first considers "whether the case 'might have been brought' in the destination venue." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting 28 U.S.C. § 1404(a)). The parties agree that this case could have been brought in the Middle District of Tennessee. Roth Br. 20; Resp. 14. As such, the Court moves to the second step of the discretionary venue transfer analysis and considers the private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the cost of attendance for willing witnesses; and (4) all other practical problems. *In re Clarke*, 94 F.4th 502, 509 (5th Cir. 2024) (citation omitted). "No factor is of dispositive weight, and [the Fifth Circuit has] cautioned against a raw counting of the factors that weighs each the same." *Id.* (cleaned up).

In evaluating the first factor, the Court considers "whether the proposed transferee venue will allow more convenient access to the evidence." *Am. Leather Operations, LLC v. Ultra-Mek, Inc.*, No. 3:13-CV-4496-N, 2014 WL 12584334, at *2 (N.D. Tex. Apr. 8, 2014) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 316). Defendants' books and business records are located in the Middle District of Tennessee, Roth Br. 21, while Plaintiff's books and records are located in

---

[3] Restorative Industries incorporated by reference all arguments made in the Roth Motion and Roth Brief. Restorative Br. 11-12.

the Northern District of Texas, Resp. 15. However, "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *In re Planned Parenthood*, 52 F.4th at 630 (citation omitted). Restorative Industries manufactures its products exclusively in Tennessee. App. in Supp. of Roth Mot. [ECF No. 13] Ex. 1 [ECF No. 13-1] ¶ 21. Any physical evidence related to the manufacture, chemical composition, or quality of Defendants' products is in Tennessee. Restorative Industries Reply 8. Because Plaintiff's claims are based on allegations that Defendants' advertisements "misrepresent[] the ***nature, characteristics, [or] qualities*** of Defendants' goods," Compl. ¶ 87 (emphasis added), this physical evidence is critical to this case. As such important evidence in this case is located in the Middle District of Tennessee, this factor weighs in favor of transfer.

The second factor, the availability of compulsory process, "favors transfer where non-party witnesses . . . are outside [this Court's] subpoena power [and] a proper venue that does enjoy absolute subpoena power for both depositions and trial is available." *In re TikTok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023) (internal quotation marks and citation omitted). However, this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (citation omitted). Defendants have not identified any witness who is unwilling to testify but point out that subpoenas issued by this Court to residents of Tennessee and neighboring states would be subject to a motion to quash under Federal Rule of Civil Procedure 45. Roth Br. 22-23. Similarly, non-party witnesses in Texas would be outside the subpoena power of the Middle District of Tennessee. Therefore, this factor receives less weight and is neutral.

The third factor is the cost of attendance for willing witnesses. "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance

to be traveled." *In re TikTok*, 85 F.4th at 361 (alteration in original) (citation omitted). Both Plaintiff and Defendants identify third-party witnesses that would have to travel from Tennessee to Texas or vice versa. As to party witnesses, Plaintiff identifies three corporate representatives who reside in Texas. Resp. 17. And Defendants identify three employees—including Roth—as potential witnesses and note that the vast majority of their employees, including those involved in chemistry and marketing, are located in Tennessee. Restorative Industries Reply 9. This factor weighs in favor of transfer.

The fourth factor "considers all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re TikTok*, 85 F.4th at 362 (internal quotation marks and citation omitted). The parties do not raise any such practical problems. This factor is neutral. Because two factors support transfer and the other two are neutral, the Court concludes that the private interest factors weigh in favor of transfer.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *In re Volkswagen AG*, 371 F.3d at 203 (citation omitted).

The first public factor, the administrative difficulties flowing from court congestion, focuses on "docket efficiency, an issue [the Fifth Circuit has] recognized the district court is better placed to evaluate." *In re TikTok*, 85 F.4th at 363 (cleaned up). As of December 31, 2025, the Northern District of Texas had 638 weighted filings per judgeship, while the Middle District of Tennessee had 553. U.S. DIST. CTS. – NAT'L JUD. CASELOAD PROFILE ("Caseload Profile") (last visited Feb. 12, 2026) www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf. "By quantifying case complexity, weighted filing statistics give a more

6

complete picture of docket congestion than simple caseload statistics can provide." *Radoszewski v. Plastics Indus. Ass'n*, No. 3:22-CV-1482-B, 2022 WL 17330464, at *6 (N.D. Tex. Nov. 29, 2022). Finally, the Middle District of Tennessee had no vacant judgeship months as of December 31, 2025, while the Northern District of Texas had 17. *See* Caseload Profile. While court congestion statistics are not dispositive, the Court concludes that the Middle District of Tennessee at this time may very well be able to resolve this case in a more expeditious manner. *See In re Clarke*, 94 F.4th at 510. Therefore, this factor weighs in favor of transfer.

The second public factor, the local interest in having localized interests decided at home, encompasses "the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed*, 30 F.4th at 435 (quoting *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed Cir. 2020)). While Plaintiff's residence is in Texas, the majority of the events that gave rise to the suit occurred in the Middle District of Tennessee. Most significantly, Restorative Industries manufactures its products and creates its advertising campaigns in Tennessee. Restorative Industries Reply 10.

Plaintiff argues that Defendants "target[] Plaintiff and other Texas contractors, fence companies, and consumers," and that the Northern District of Texas has a strong local interest because Plaintiff is located here. Resp. 18. But the Court "look[s] not to the parties' significant connection to each forum." *In re TikTok*, 85 F.4th at 364 (citation omitted). Plaintiff sells and advertises its products nationwide, Compl. ¶¶ 21-24, as does Restorative Industries, Compl. ¶ 28 (alleging that Restorative Industries "markets, distributes, and sells [its products] in interstate commerce"). Therefore, Plaintiff suffers the effects of Defendants' false advertising nationwide. A "diffuse interest—that is, an interest that could apply to virtually any judicial district or division . . . cannot affect the local-interest determination." *In re Clarke*, 94 F.4th at 510 (internal

7

quotation marks omitted). Because the impact of Defendants' alleged false advertising and business disparagement is felt nationwide, Compl. ¶ 98, and because the majority of the events that gave rise to this suit occurred in the Middle District of Tennessee, this factor weighs in favor of transfer.

The third factor is the familiarity of the forum with the law that will govern the case. When the predominant issue in the case arises under federal law, as it does in this case, this factor is neutral. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1004 (E.D. Tex. 2009) (citing, among other sources, *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). Plaintiff asserts a federal Lanham Act claim and a Texas state law unfair competition claim based on the Lanham Act claim. And though Plaintiff also asserts a Texas common law business disparagement claim, "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). The law at issue here is not "exceptionally arcane." *Id.* at 68. Therefore, this factor is neutral.

The fourth factor is the avoidance of unnecessary problems of conflict of laws. This factor is also neutral as neither party identified any such issues. Because the two non-neutral factors support transferring this case, the Court concludes that the public interest factors weigh in favor of transfer.

In sum, the private and public interest factors favor transfer. Because Defendants have clearly demonstrated that a transfer is for the convenience of parties and witnesses and in the interest of justice, the Court transfers this case to the United States District Court for the Middle District of Tennessee.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Caleb Roth's Motion to Dismiss Plaintiff's Complaint, or Alternatively, to Transfer Venue [ECF No. 11] and Defendant Restorative Industries, LLC's Motion to Dismiss Plaintiff's Complaint, or Alternatively, to Transfer Venue [ECF No. 15] only to the extent that the Court **GRANTS** Defendants' alternative requests to transfer this case. *See* Roth Mot. 1; Restorative Industries Mot. 1. It is **ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Middle District of Tennessee. Because the Court exercises its discretion to transfer the case, the Court does not reach the remaining arguments in the Motions.

**SO ORDERED.**

SIGNED February 20, 2026.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**